T.C. Summary Opinion 2005-176


UNITED STATES TAX COURT


GREGG R. AND TERESA M. GILBERT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7422-04S.            Filed December 1, 2005.


Gregg R. and Teresa M. Gilbert, pro sese.

Mary Ann Waters, for respondent.


GOLDBERG, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $2,411 and $2,512 for the taxable years 2000 and 2001, respectively.

The issue for decision is whether the amounts of $17,067 and $16,001[1] received by petitioner Gregg Gilbert as insurance renewal premiums during taxable years 2000 and 2001, respectively, are subject to self-employment taxes pursuant to sections 1401 and 1402.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Meadows of Dan, Virginia, on the date the petition was filed in this case.

There is no disagreement among the parties as to the facts, which are almost fully stipulated. Petitioners are married and filed timely joint Federal income tax returns, Forms 1040, U.S. Individual Income Tax Return, for the taxable years 2000 and 2001.

---

[1]In the notice of deficiency, respondent determined that the amount of $17,775, which petitioner reported on his 2001 Federal income tax return as insurance renewal commissions, was self-employment income subject to self-employment tax. However, at trial respondent conceded that $1,774 of this amount was received by petitioner as Social Security benefits and as such the amount of $1,774 was not subject to self-employment tax.

Gregg Gilbert (petitioner) worked as an insurance salesperson/agent for Capitol American Life Insurance Company, now known as Conseco Health Insurance Company (Conseco), beginning in 1985.  Petitioner's employment relationship with Conseco was established in a Marketing Agreement.  While serving as an agent of Conseco, petitioner's duties included soliciting applications for insurance, collecting payments, supervising approved subordinates, and generally assisting Conseco policyholders.  The original Marketing Agreement, effective July 30, 1985, between petitioner and Conseco, states, in pertinent part:

### C.   COMMISSIONS

1.   CAPITOL [Conseco] agrees to pay commissions to the REPRESENTATIVE [petitioner] in accordance with the "Commission Schedule and Vesting Provisions" attached hereto as Exhibit A and made a part hereof.  Such payment shall be full and complete compensation for all insurance business accepted by CAPITOL [Conseco], whether written personally by the REPRESENTATIVE [petitioner] or any of his subordinate representative(s), and for all services performed by or required of the REPRESENTATIVE [petitioner] and any subordinate, representative(s) he may appoint hereunder.

### E.   PROHIBITED CONDUCT

2.   The REPRESENTATIVE agrees for a period of one (1) year after the termination of this Agreement, by either party for any reason, he will not, without the prior written consent of CAPITOL [Conseco], for himself or on behalf of another, engage in any life, annuity, or accident and health insurance business, either (a) within the State or States in which he is licensed by CAPITOL [Conseco] and by the use of the Marketing Method or Marketing Methods set forth on the first page of this Agreement, or (b) within any other State or States in which he is hereafter licensed by CAPITOL [Conseco] and by the use of any other Marketing Methods

which he is authorized to use on behalf of CAPITOL [Conseco] after the date hereof.

The Commission Schedule and Vesting Provisions referred to in the Marketing Agreement were amended several times throughout the course of petitioner's employment. The final amendment, in the record, to the Commission Schedule and Vesting Provisions, effective August 15, 1988, provides, in pertinent part, as follows:

> This Schedule is attached to and made a part of the Agreement by and between Gregg R. Gilbert (the "REPRESENTATIVE") [petitioner] and CAPITOL AMERICAN LIFE INSURANCE COMPANY (CAPITOL) [Conseco], effective July 30, 1985, which Agreement, as amended from time to time, is hereinafter referred to as the "Agreement."

> In Consideration of the faithful performance of all of the terms of the Agreement by the REPRESENTATIVE [petitioner], CAPITOL [Conseco] agrees to allow and pay to the REPRESENTATIVE [petitioner], as full compensation, commissions at the following rates on "cash premiums as collected" (as hereinafter defined) on policies issued upon applications written by the REPRESENTATIVE [petitioner] and his subordinate representative(s), if any, less all first year and renewal commissions due from or payable by CAPITOL [Conseco] to the REPRESENTATIVE's subordinate representative(s), if any, as per the attached "Schedule of Commissions and Fees."

> GENERAL PROVISIONS

> 1. As used herein, "cash premiums as collected" means gross premiums (but not including enrollment or other fees) received in CAPITOL's [Conseco's] Executive Office for those policies or applications therefor specified above, less premiums for those policies or applications therefor returned to the policyholder or applicant directly or through the REPRESENTATIVE [petitioner].

> *    *    *    *    *    *    *

7.  Commissions on business produced by the REPRESENTATIVE [petitioner] shall be vested in and paid to the REPRESENTATIVE [petitioner], his heirs, executors, administrators, successors and assigns unless and until the REPRESENTATIVE's [petitioner's] "cash premiums as collected" fall below $8,000.00 for a consecutive 12-month period, at which time no further commission will be vested in or paid to the REPRESENTATIVE [petitioner].

\*   \*   \*   \*   \*   \*   \*

9.  All vested commissions shall be forfeited, and no monies otherwise payable to the REPRESENTATIVE [petitioner] will be paid to the REPRESENTATIVE [petitioner] if, for himself or on behalf of another, the REPRESENTATIVE [petitioner] replaces any policy written under this Agreement with a policy issued by another insurance company; or, induces or attempts to induce any CAPITOL [Conseco] policyholder to cancel, lapse or fail to renew any policy issued by CAPITOL [Conseco], or any parent, subsidiary or affiliate of CAPITOL [Conseco]; or, solicits, accepts or retains any services of any representative licensed to solicit applications for insurance to be issued by CAPITOL [Conseco], or any parent, subsidiary of affiliate of CAPITOL [Conseco], as long as such person is so associated or within one year after such person has ceased to be associated; or, after the termination of this Agreement between the REPRESENTATIVE [petitioner] and CAPITOL [Conseco], by either party for any reason, the REPRESENTATIVE [petitioner], without the written consent of CAPITOL [Conseco], for himself or on behalf of another, uses as stated on the first page of this Agreement or as subsequently amended, the Marketing Method to engage in any life, annuity or accident and health insurance business.

The Schedule of Commissions and Fees, referred to in the amended Commission Schedule and Vesting Provisions, was also amended several times throughout the course of petitioner's employment.  The final amendment, in the record, to the Schedule of Commissions and Fees, effective October 12, 1991, provides as follows:

SCHEDULE OF COMMISSIONS AND FEES

This Schedule is attached to and made a part of the Agreement by and between Gregg R. Gilbert (the "REPRESENTATIVE") [petitioner] and CAPITOL AMERICAN LIFE INSURANCE COMPANY ("CAPITOL") [Conseco].

| Type of Policies | Plan Code | Enrollment Fee | COMMISSION | |
|---|---|---|---|---|
| | | | First Year | Renewal |
| Hospital Intensive Care | I- Series | 100% | 65% | 15% |
| Hospital Intensive Care | SG | -- | * | * |
| CancerAid | V- Series (Except VF) | 100% | 65% | 15% |
| CancerAid | J- Series | 100% | 65% | 15% |
| HeartCare | K- Series | 100% | 65% | 15% |
| ** Economaster | All (i.e., VF) | 100% | 49% | 15% |
| Disability Income | TS | 100% | 55% | 15% |
| Disability Income | RY | 100% | 55% | 15% |
| *** Disability Income | RG | -- | 55% | 15% |
| Accident | B | 100% | 55% | 15% |
| Accident With Return of Premium | BA | 100% | 60% | 15% |
| Accident Without Return of Premium | BA | 100% | 43% | 15% |
| Hospital Indemnity | HO | 100% | 55% | 15% |
| *0* Life | L | -- | 75% | 9% |
| Additional Benefit Rider | Z- Series | -- | 0% | 0% |

Less all first year and renewal commissions due or payable to sub-agents, if any.

* Pay "IG" First Year/Renewal on $320 Daily Benefit with no commission on $280 Daily Benefit.

** Renewals paid year 2 through 6 only.

*** Notwithstanding any provisions in this agreement, renewal commissions on the Security Protector (Plan Code RG) will be paid on the full renewal premium for a period of 9 renewal years (policy years 2 through 10 only). However, renewal commissions on said policies will cease at the policy anniversary date following the insured's 65th birthday.

*0* Renewals paid years 2 through 10 only; 3% service fee year 11 and after, if agency actively servicing policyholders.

As previously stated, petitioner's contractual agreements with Conseco were amended throughout the course of petitioner's employment. While there may have been amendments executed after October 12, 1991, neither respondent nor petitioner has copies of them and neither was able to obtain copies of such amendments.

Petitioner received renewal commission compensation throughout his employment with Conseco. Renewal commission payments reflect renewed policies that were originally sold by petitioner as a representative, or one of his subordinate representatives, on behalf of Conseco in years dating back to

1985. Per the contractual agreements between petitioner and Conseco, if the Marketing Agreement were terminated after 5 years or more, then petitioner would be vested and would receive 100% of the renewal policy commissions based on the applicable percentages laid out in the Marketing Agreement and amendments. All commissions remain vested in petitioner until petitioner's "cash premiums as collected" fall below $8,000 for a consecutive 12-month period. At the time of trial, petitioner was still receiving commission compensation from renewal policies with Conseco.

An accident suffered by petitioner in 1999 caused him to retire on Social Security disability. Petitioner was effectively terminated from his position with Conseco in January 1999 following this disabling accident. Petitioner ceased to be a "manager of record" on any account after January 1999. Petitioner's Marketing Agreement with Conseco was officially terminated effective October 13, 2000. Petitioner did not sign a separate termination agreement.

Prior to termination, petitioner would receive additional renewal commission payments if one of his client's policy payments increased due to amendments or other economic changes. However, after termination of his employment with Conseco, petitioner did not get the benefit of the increase in these policy payments. Instead, after termination of petitioner's

employment with Conseco, the amounts of his renewal commission payments were calculated based upon the old premiums, and the new agent assigned to this client would receive the benefit for the increase in the premiums. This appears to be the only difference, as to the calculation of the amounts of the renewal commission payments, between the renewal commission payments received before termination of petitioner's employment with Conseco and the renewal commission payments received post-termination.

As previously stated, petitioner continues to receive commission compensation from renewal policies with Conseco. The renewal commission payments are disbursed per the Marketing Agreement without regard to whether petitioner is still employed by Conseco. Petitioner received the same renewal commission payments during his employment with Conseco and paid self-employment tax on those payments. Also, the renewal commission payments are based on actual renewals of policies with Conseco during the year for which the payments are received. The renewal commission payments received by petitioner during the taxable years 2000 and 2001 were in no way an annuity or estimated payments. Since petitioner's termination in October 2000, petitioner has not received renewal commission payments from any policy that was sold after 1997. Petitioner has never received any renewal commission payments from his final year with Conseco,

as he was disabled during his final year with the company and he was not actively selling or supervising the sale of any policies.

Petitioner did receive some renewal commission payments from January 1 through October 13, 2000. The parties are unsure of the exact amount of these renewal commission payments. It is likely that the payments made in 2000, prior to October 13, 2000, were approximately equal in amount to two-thirds of the payments received by petitioner for the entire 2000 tax year.

Conseco issued petitioner a Form 1099-MISC, Miscellaneous Income, for taxable year 2000 of $17,067. Conseco issued petitioner a Form 1099-MISC for taxable year 2001 of $16,001. The Social Security Administration issued petitioner a Form SSA-1099, Social Security Benefit Statement, for taxable year 2001 of $1,774.

On their Forms 1040, U.S. Individual Income Tax Return, petitioners reported as "Other Income", on line 21, $17,067.08 and $17,775.19 for taxable years 2000 and 2001, respectively. Petitioners, on their 2000 and 2001 Forms 1040, labeled this income as "Insurance Renewal Commissions".[2]

It is uncontested that petitioners reported the receipt of renewal commission payments on their Federal income tax returns

---

[2]As previously stated in note 1, $1,774 of the $17,775.19 reported as "Other Income" on petitioners' 2001 Form 1040 was Social Security benefits received by petitioner during taxable year 2001.

for the taxable years 2000 and 2001. Nevertheless, the parties do not agree as to whether insurance renewal payments petitioners received are subject to self-employment tax.

Respondent issued petitioners a notice of deficiency for taxable years 2000 and 2001, in which respondent determined that petitioners were liable for self-employment taxes of $2,411 and $2,512 for taxable year 2000 and 2001, respectively.

## Discussion[3]

Section 1401 imposes a tax on self-employment income of every individual for old age, survivors, disability insurance, and hospital insurance. Sec. 1401(a) and (b); Schelble v. Commissioner, 130 F.3d 1388, 1391 (10th Cir. 1997), affg. T.C. Memo. 1996-269; sec. 1.1401-1(a), Income Tax Regs. Self-employment income includes the net earnings from self-employment derived by an individual during the taxable year. Sec. 1402(b). For purposes of the self-employment tax, the term "net earnings from self-employment" is the gross income derived by an individual from any trade or business carried on by such individual, reduced by the deductions attributable to the trade or business. Sec. 1402(a); sec. 1.1402(a)-1, Income Tax Regs. It is well established that the earnings of an insurance agent

---

[3]We decide the issue in this case without regard to the burden of proof. Accordingly, we need not decide whether the general rule of sec. 7491(a)(1) is applicable to the case at bar. See Higbee v. Commissioner, 116 T.C. 438 (2001).

who is an independent contractor are "self-employment income" subject to self-employment tax. Simpson v. Commissioner, 64 T.C. 974 (1975); Erickson v. Commissioner, T.C. Memo. 1992-585, affd. without published opinion 1 F.3d 1231 (1st Cir. 1993).

In Newberry v. Commissioner, 76 T.C. 441, 444 (1981), this Court held that, for income to be taxable as self-employment income, "there must be a nexus between the income received and a trade or business that is, or was, actually carried on." Under our interpretation of the "nexus" standard, any income must arise from some actual (whether present, past, or future) income-producing activity of the taxpayer before such income becomes subject to self-employment tax. Id. at 446. Additionally, section 1.1402(a)-1(c), Income Tax Regs., provides that gross income derived from an individual's trade or business may be subject to self-employment tax even when it is attributable in whole or part to services rendered in a prior taxable year. This Court and others have repeatedly applied the "nexus" test.

In applying the statutory definition of self-employment income, we must decide whether the income from the renewal commission payments satisfies three requirements: That it was (1) derived; (2) from a trade or business; (3) carried on by petitioner. In order to be derived from a trade or business the payment received by an insurance agent after termination must be tied to the quantity or quality of the taxpayer's prior labor,

rather than the mere fact that the taxpayer worked or works for the payor.  <u>Jackson v. Commissioner</u>, 108 T.C. 130 (1997).

Petitioners argue that, even though the payments received by petitioner after the termination of his employment as an independent agent for Conseco were renewal commission payments, such payments are exempted from self-employment tax pursuant to section 1402(k).

Section 1402(k) provides:

(k) Codification of treatment of certain termination payments received by former insurance salesmen.--Nothing in subsection (a) shall be construed as including in the net earnings from self-employment of an individual any amount received during the taxable year from an insurance company on account of services performed by such individual as an insurance salesman for such company if--

(1) such amount is received after termination of such individual's agreement to perform such services for such company,

(2) such individual performs no services for such company after such termination and before the close of such taxable year,

(3) such individual enters into a covenant not to compete against such company which applies to at least the 1-year period beginning on the date of such termination, and

(4) the amount of such payment--

(A) depends primarily on policies sold by or credited to the account of such individual during the last year of such agreement or the extent to which such policies remain in force for some period after such termination, or both, and

(B) does not depend to any extent on length of service or overall earnings from services performed for such company (without regard to

whether eligibility for payment depends on length of service).

A review of pertinent caselaw is helpful to explain our decision that the renewal commission payments at issue in the present case are not exempted from self-employment tax pursuant to section 1402(k).

Jackson v. Commissioner, supra, involved termination payments to a State Farm agent under a contract providing for a 2-year qualification period, payments based on a fixed percentage of the final-year's compensation without regard to the length of service, and a reduction for commission chargebacks on policies canceled after termination. This Court held that the termination payments were not subject to self-employment tax because the payments were not tied to the "quantity or quality" of the employee's services. In Jackson v. Commissioner, supra at 136, we also recognized the factual distinction identified in Schelble v. Commissioner, 130 F.3d 1388 (10th Cir. 1997): where the termination payments are tied to the quantity or quality of the taxpayer's prior services, the payments will be subject to self-employment tax.

In Lencke v. Commissioner, T.C. Memo. 1997-284, after distinguishing the facts from those in Jackson, this Court held that payments in lieu of renewal commissions to which an insurance agent would otherwise be contractually entitled are

subject to self-employment tax because the payments retain the character of the renewal commissions they replaced.

Congress, in section 1402(k), codified the standard established in <u>Jackson</u> with respect to termination payments made after December 31, 1997, to an "insurance salesman". Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 922(a), 111 Stat. 879. As previously stated, section 1402(k) exempts insurance salesman termination payments from self-employment tax if, among other things, the amount of the payments "does not depend to any extent on length of service or overall earnings from services performed for such company (without regard to whether eligibility for payment depends on length of service)." Sec. 1402(k)(4)(B). The legislative history of section 1402(k) makes it clear that the provision was intended to codify existing law.[4]

The facts, as discussed below, of the present case support the conclusion that the present renewal commission payments should be subject to self-employment tax because the payments are "tied to the quantity [and] quality of the taxpayer's prior

_____

[4]After citing <u>Jackson v. Commissioner</u>, 108 T.C. 130 (1997), <u>Gump v. United States</u>, 86 F.3d 1126 (Fed. Cir. 1996), and <u>Milligan v. Commissioner</u>, 38 F.3d 1094 (9th Cir. 1994), revg. T.C. Memo. 1992-655, the conference committee report states: "The House bill codifies case law by providing that net earnings from self-employment do not include any amount received during the taxable year from an insurance company on account of services performed by such individual as an insurance salesman for such company". H. Conf. Rept. 105-220, at 458 (1997), 1997-4 C.B. (Vol. 2) 1457, 1927-1929.

labor", and these commission payments derive from the "carrying on" of petitioner's business as an independent insurance agent with Conseco.

In the present case, the renewal commission payments reflect renewed policies that were originally sold by petitioner as a representative, or one of his subordinate representatives, on behalf of Conseco in years dating back to 1985. The amounts of the renewal commission payments, received after termination of petitioner's marketing agreement with Conseco, are calculated based upon the premiums received before petitioner's termination. Unlike in Jackson, the renewal commission payments themselves and the amounts of such payments actually arise from petitioner's business activity. See Jackson v. Commissioner, supra at 132. Additionally, unlike in Jackson, petitioner in the present situation had a vested right to the renewal commission payments, which consisted of an identifiable monetary amount. See id. Further, the renewal commission payments are disbursed not pursuant to a termination agreement but per the Marketing Agreement, without regard to whether petitioner was still employed by Conseco. Petitioner received the same renewal commission payments during his employment with Conseco and paid self-employment tax on those such payments. Like Lencke, the renewal commission payments retain the same character of the

payments received during petitioner's employment with Conseco.
Lencke v. Commissioner, supra.

In the present case, the payments received by petitioner after the termination of his employment as an independent insurance agent with Conseco were renewal commission payments. The legislative history of section 1402(k), the case history, previously discussed, and the facts of the present case show that the renewal commission payments are "tied to the quantity [and] quality of the taxpayer's prior labor" and that these commission payments derive from the "carrying on" of petitioner's business as an independent insurance agent with Conseco. Therefore, the renewal commission payments in the present case are not exempted from self-employment tax pursuant to section 1402(k). See Lencke v. Commissioner, supra; Erickson v. Commissioner, supra.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered
under Rule 155.